UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA RODRIGUEZ, Individually and as Administratrix of the Estate of Jose Rodriguez<br><br>Plaintiff,<br><br>v.<br><br>VICTOR MONTALVO and CARMEN SOLIS<br><br>Defendants. | CIVIL ACTION NO.<br>04-40224-NMG |

**PLAINTIFF'S REPLY BRIEF TO MEMORANDUM OF DEFENDANT SOLIS IN OPPOSITION TO PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION**

Plaintiff Maria Rodriguez, through counsel, submits this Reply Brief to respond to Defendant Carmen Solis' opposition to her motion for a preliminary injunction in this fraudulent transfer action. Sections A and B of this brief will respond to the factual and legal arguments advanced by Defendant Solis. Section C sets forth and clarifies the relief that Plaintiff is requesting in her motion for preliminary injunction.

I. ARGUMENT

    A.     <u>Plaintiff is Likely To Succeed on the Merits of her Fraudulent Transfer Claim</u>

Defendant Solis argues that Ms. Rodriguez is unlikely to succeed on the merits of her claim because she refused reasonable offers of settlement prior to the commencement of her civil rights lawsuit, Civil Action No. 02-40139 (NMG). However, the issue is not whether Ms. Rodriguez will prevail in her civil rights lawsuit, or whether she refused any settlement

offers.[1] Ms. Rodriguez brought this fraudulent transfer action alleging that Defendant Montalvo transferred the subject property in order to place the asset or its proceeds beyond the reach of his creditors. Thus, the appropriate inquiry is the likelihood of success of Ms. Rodriguez's claim that Defendant Montalvo's transfer violated the Uniform Fraudulent Transfer Act ("UFTA"), M.G.L. c. 109A.

   1.   Claim under M.G.L. c.109A, § 5(a)(1)

In order to succeed on the merits, Ms. Rodriguez must only show a likelihood of success under **any** of her claims under the UFTA. Under section 5(a)(1) of the UFTA, a transfer is fraudulent as to a creditor whose claim arose before or after the transfer if it is made "with actual intent to hinder, delay or defraud[.]" Because of the difficulty in obtaining direct evidence of actual intent, courts have identified several traditional indicia, now codified in the Act, which can serve as conclusive evidence of fraud. M.G.L. c. 109A, § 5(b); see Hasbro, Inc. v. Serafino, 37 F.Supp.2d 94, 98 (D. Mass. 1999) ("While the 'presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud.'") (quoting Palmer v. Murphy, 42 Mass.App Ct. 334, 345 (1997)).

The major statutory factors include: whether the transfer was to an "insider"; if the debtor retained control of the property after the transfer; the timing of the transfer with regard to litigation against the debtor; the value of the consideration received; if the debtor was insolvent or became insolvent after the transfer, or if the debtor incurred a substantial debt

---

[1] After oral argument and extensive briefing by the parties, the Court found that Ms. Rodriguez was reasonably likely to prevail in Civil Action No. 02-40139 and allowed an attachment in the amount of $75,000.00. Ms. Solis is now raising many of the same arguments that Mr. Montalvo made in opposing the attachment, and she has not offered any compelling reason why the Court should revisit its earlier ruling. To the extent Ms. Solis is relying upon settlement discussions in the underlying fair housing case, offers of settlement are generally not admissible to prove the invalidity of a claim or its amount. See F.R.E. 408. If the Court feels that a consideration of the settlement negotiations is appropriate, Ms. Rodriguez respectfully requests the opportunity to submit a detailed affidavit on the complete history of the negotiations, which have been mischaracterized and distorted by Ms. Solis' counsel.

shortly before or after the transfer; and if the property represented substantially all of the debtor's assets. M.G.L. c. 109A, §§ 5(b)(1)-(2), 5(b)(4)-(5), and 5(b)(8)-(10).

These traditional "badges" of fraud are present in the instant case. Defendant Montalvo transferred the subject property to his mother, Carmen Solis, after Ms. Rodriguez commenced her civil rights lawsuit. See M.G.L. c. 109A, §§ 2 (defining "insider"), 5(b)(1), and 5(b)(4). Further, Montalvo recorded a homestead declaration protecting his only other real asset on **the same day** that he transferred the first half of his interest in the subject premises. He subsequently transferred his residual interest – his only remaining unencumbered asset -- **the day after** he was notified that Ms. Rodriguez was moving to attach the property. See M.G.L. c. 109A, §§ 5(b)(4), 5(b)(5).

Mr. Montalvo also declared bankruptcy less than 18 months after the second transfer. See M.G.L. c. 109A, §§ 5(b)(9), 5(b)(10). In sworn testimony at the creditors' meeting, Defendant Montalvo admitted that he had no income at the time he transferred this property and that his debts were mounting, including unpaid child support and credit card bills which exceeded $26,000.00 in 2004. Testimony of Victor Montalvo (excerpt), attached as Exhibit A, pp. 17, 22-23; M.G.L. c. 109A, §§ 5(b)(9), 5(b)(10). Under the UFTA, a debtor "who is generally not paying his debts as they become due is presumed to be insolvent." M.G.L. c. 109A, § 3; see Hasbro, 37 F.Supp.2d at 98 (finding actual intent to defraud when debtor attempted to transfer a substantial portion of his property to relatives while he was being sued; debtor had no source of income and faced considerable debt; the timing was suspicious; and debtor made no mention at attachment hearing of his intent to grant mortgages on the property within a few days). Defendants have presented no evidence to rebut this presumption, or to counter any of the other indicia of fraud which are present in this case.

Montalvo further admitted that he continued to manage the property at 30 Mount Pleasant Avenue after the transfers, answering tenant calls, contracting for maintenance of the property and collecting rents which he allegedly passed to his mother. Exhibit A, pp.19-20; M.G.L. c. 109A, § 5(2). However, the record contains no evidence that Ms. Solis claimed such rent as income, maintained the property, listed the property as an asset on her tax returns or took any deductions with respect to its maintenance. Counsel for Ms. Solis acknowledged at the hearing that she made no payments on the mortgage for the property during this time.

Defendant Solis' only response is that she received fair consideration for the transfer, and that any claim based on her insider status is barred by the statute of limitations. Solis first misapprehends the allegation of insider status as a separate claim under M.G.L. c. 109A, §6(b), which provides that a transfer may be fraudulent if it was made to an insider for an antecedent debt. Ms. Rodriguez presently does not have a claim under this section of the Act.[2] Nevertheless, Solis' status as an insider is critical because it is one of the many traditional "badges" of fraud, present in this case, from which this Court may infer an actual intent to defraud. See M.G.L. c. 109A, § 5(b)(1).

Second, Solis' argument that she received adequate consideration relies upon cases interpreting the **former** Uniform Fraudulent Conveyance Act ("UFCA"). Memorandum In Opposition, pp.10-11. In 1996, the Legislature struck the existing statute and adopted a new Uniform Fraudulent Transfer Act, which replaced the standard of "fair consideration" with the concept of "reasonably equivalent value," a test that is used extensively in the Bankruptcy Code, 11 U.S.C. § 548. This factor is weighed more closely when the challenged transfer is, as here, to a family member: "For obvious reasons, judges are particularly insistent upon

---

[2] At the time this action was filed, Ms. Rodriguez had no way of knowing that Defendants would claim the transfers were in satisfaction of an antecedent debt. The relevant deeds made no reference to any prior debt, and Ms. Rodriguez only learned of this alleged claim at the creditors' meeting while this action was still subject to the automatic stay.

proof of commensurability when they are dealing with intrafamilial transfers attacked as fraudulent conveyances." Scholes v. Lehmann, 56 F.3d 750, 758 (7th Cir. 1995). Intrafamily transactions are generally presumed to be gifts for income tax purposes. See Commissioner of Internal Revenue v. Young, 120 F.2d 159 (1941).

Here, Defendants' deeds recite $100.00 as consideration for each transfer. However, Defendants claim that these transfers are in fact supported by Solis' $5,000.00 payment to Tracy Montalvo and her joint assumption of the 30 Mount Pleasant Avenue mortgage with Defendant Montalvo, and other unspecified cash payments.[3] The record contains no written agreement to repay Solis, no promissory note, recorded mortgage or security interest, or tax records reflecting any outstanding liabilities. Montalvo did not convey the property at the time Solis executed the assumption agreement or record the agreement.

Nothing within the assumption document grants Solis any interest in the property. An assumption agreement does not create a property interest absent a conveyance in the deed or a deed reflecting and subject to such assumption, which the grantee agrees to accept and undertake. See Flynn v. Kenrick, 285 Mass. 446 (1934); Consumers Sav. Bank v. Coven, 8 Mass.App Ct. 594 (1979); M.G.L. c.183, § 1 (deed must be executed and delivered in order to convey property interest). The assumption agreement, alone, only purported to bind Solis jointly to the lender, in the event Montalvo defaulted on any payment. It in no way relieved Montalvo of this debt or created any new debt to Solis. His subsequent transfer of the property thus did not leave his estate essentially unchanged, but rather dramatically depleted the assets available to his creditors. See Scholes, 56 F.3d at 758 (examining whether debtor received release of commensurate legal obligations to transferee, or whether transferee's

---

[3] Although Montalvo states in his affidavit that Solis gave him $5,000.00 to "buy out" his ex-wife, he omitted this information at the creditors' meeting and repeatedly testified that he was not sure how much he owed his mother. Montalvo Affidavit at p. 5; Exhibit A, pp.11-13. Montalvo also testified that all payments by Solis were in cash. Exhibit A, pp.11-12.

-5-

claims were worth what debtor paid to discharge them); c.f. In re Morse Tool, Inc., 148 B.R. 97, 139 (Bankr. D. Mass. 1992) (challenged transfer did not diminish the assets available to creditors). Nor do Defendants claim that the alleged debts approached the value of the transferred property, which Solis refinanced for $125,700.00 and sold for $205,000.00, one year after the final transfer.[4]

Further, there is no evidence that Solis expected to be repaid or that her contributions to her son were anything but gifts, and Montalvo's own testimony does not support his claim that he was under an obligation to repay her, similar to his obligation to repay his many other creditors.[5] The other loans which were allegedly cancelled by the transfers are unsupported by any documentary evidence, and neither Defendant is able to fix even a general amount for these sums, or even for the times at which these loans were made. Courts, including the First Circuit, have found the absence of such documentation to be dispositive on the question of whether repayment of an alleged loan to a family member represented a reasonably equivalent value. See In re Rowanoak Corp. v. Walsh, 344 F.3d 126, 138 (1st Cir. 2003) (no credible evidence that mother gave any value to the debtor where no documents, such as a promissory note, mortgage or security interest, supported claim of loan to debtor, and debtor's tax returns reflected no outstanding loans to mother); c.f. The Frontier Group of Mass., Inc. v. Price, 1998 WL 755187, *4 (1998) (granting preliminary injunction to place proceeds of property

---

[4] In arguing that the $5,000.00 payment and deeds' $100.00 recitations should not be compared against her later refinance and sale of the property, Solis cites In re Morse Tool, Inc., 148 B.R. 97 (Bankr. D. Mass. 1992). Morse Tool concerned the value of a security interest acquired in a leveraged buyout of the debtor. Solis cites a part of the analysis in which the court considers whether the fair market value of the debtor's assets should be reduced by a sales commission in determining whether the debtor was left, after the challenged transfer, with unreasonably small capitalization. See Morse Tool, 148 B.R. at 136. This analysis applies to Section 4 of the UFTA -- a section which is "shot through with questions of reasonableness" -- and not to the tests set forth in Section 5 or 6(a), cited in Plaintiff's Complaint. See In re W.R. Grace & Co., 281 B.R. 852, 864 (Bankr. D. Del. 2002). Moreover, in finding that the debtor did not fraudulently grant the challenged security interest, the court repeatedly notes that bankruptcy was not imminent at the time of the transfer. Morse Tool, 148 B.R. at 139.

[5] When asked whether Solis expected to receive the property transfers in repayment, Montalvo testified, "I **would imagine** I would have to pay her at one point when I had it, so this house was part hers." Exhibit A, p.13. (emphasis added).

sale in escrow where relative filed an affidavit claiming mortgage granted by debtor secured several loans over a three year period before any litigation had been commenced, but Defendants submitted no cancelled checks, promissory notes or other documentation to substantiate their claims).

Moreover, the cases cited by Solis do not support a finding of reasonable equivalence in the instant case. In In re the O'Day Corp., 126 BR 370 (Bankr. D. Mass. 1991), the court found that the cancellation of loan notes did not constitute fair consideration under the former UFCA, noting "[c]learly, if property is transferred or an obligation is incurred *gratuitously* there is no fair consideration." O'Day, 126 BR at 394 (emphasis added); see also F. & M. Schaefer Brewing Co. v. Moebs, 187 Mass. 571, 574 (1905) (noting that inadequacy of consideration, while not conclusive, is generally held to be evidence of fraud).

2.  Claims under M.G.L. c.109A, §§ 5(a)(2)(ii) and (6)(a)

Ms. Rodriguez has also alleged claims under Sections 5(a)(2)(ii) and 6(a) of the UFTA. The former provides that a transfer is fraudulent if the debtor did not receive a reasonably equivalent value in exchange and "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Section 6(a) similarly provides that a transfer is fraudulent as to a creditor whose claim arose before the transfer if it is made without receiving a reasonably equivalent value and if the debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer.

There is substantial evidence that Montalvo was unable to pay his debts at the time of the transfer or **reasonably should have known** that he would incur debts beyond his ability to pay. As argued above, Montalvo testified that he had no income for over a year before the challenged transfers. Exhibit A, p.22. Less than two weeks after the first transfer to Solis,

Montalvo's first counsel filed a Motion to Withdraw in Civil Action No. 02-40139 (NMG) because Mr. Montalvo could not pay for legal representation. Montalvo declared bankruptcy in November 2004. See In re Montalvo, No. 04-46323 (JBR). His acknowledgment of his own mounting arrears put him own notice that he was incurring debts beyond his ability to pay. See In re Rowanoak, 344 F.3d at 134 (affirming the lower court's finding of fraudulent transfer under Section 5(a)(2)(ii) based in part on the debtor's acknowledgment of cash flow problems and difficulty paying bills at the time of the transfer). Thus, Ms. Rodriguez is likely to prevail under her alternate theories of liability under Sections 5(a)(2)(ii) and 6(a) of the UFTA, as well.

B. Plaintiff Will Suffer Irreparable Harm Absent the Requested Relief

Ms. Rodriguez has been litigating her fair housing case for three years. The proceeds from Defendant Solis' refinance and sale of this property are the only funds available to satisfy any judgment in her favor. Ms. Solis has admitted that of the estimated $128,000.00 that she obtained through the refinance and sale of the property, she spent almost $13,000.00 on moving expenses, gave $32,000.00 to a friend, and is holding $60,183 in her savings account. Solis Affidavit at 3. This leaves over $22,000.00 of the proceeds unaccounted for. Based on the Defendants' own admissions, Ms. Rodriguez has no confidence that these proceeds will not be further dissipated absent an injunction by the Court. Clearly, the requested relief is necessary if she is to have any chance of recovering on a judgment in her favor. See, e.g., Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986) (if party cannot collect a money judgment, then failure to enter preliminary injunction enjoining sale of assets would cause irreparable harm); Hilao v. Estate of Marcos (In re Estate of Ferdinand Marcos, Human Rights Litig.), 25 F.3d 1467, 1480 (9th Cir. 1994).

### C. The Court Should Order Defendants to Escrow the Proceeds

The Court should order Defendants to pay all remaining proceeds from the refinance and sale of the property at 30 Mount Pleasant Avenue into an escrow account to be held by the Court or a third party, to ensure that these funds are preserved. See Verified Complaint, Prayer for Relief, para.4. This remedy is appropriate and necessary in the case at bar as Solis has already spent large amounts of the proceeds; almost half of the proceeds from the mortgage and sale are gone. Ms. Solis can provide no guarantee that she will comply with a court order to refrain from using any of the remaining proceeds from these transactions. Furthermore, she has also failed to provide a full accounting of all proceeds from all transactions claimed in the Complaint.[6] Ms. Rodriguez submits that the requested relief is necessary as it is her only chance to recover on a judgment in her favor after trial in Civil Action No. 02-40139 (NMG). Courts have ordered defendants in similar cases to escrow proceeds arising from a determination that such transactions were fraudulent. See Frontier Group, at *5 (granting preliminary injunction to place proceeds of property sale in escrow).

In the alternative, Ms. Rodriguez requests that the Court enter an order freezing the proceeds of the sale and mortgage of the 30 Mount Pleasant Avenue property pending further order of this Court.

### II. CONCLUSION

For the reasons set forth above, Ms. Rodriguez requests that the Court order Defendants to pay all remaining proceeds from the refinance and sale of the property at 30 Mount Pleasant Avenue into an escrow account to be held by the Court or a third party or, alternatively, freeze the remaining proceeds.

---

[6] Ms. Solis identified $60,183.00 as remaining from her sale of the subject property. However, she has still not accounted for the outstanding proceeds from her mortgage of the property. As such, the Court's order should presently extend to the $60,183.00 that has been identified and, after a proper accounting is provided, should ultimately be extended to cover up to $75,000.00 of any existing proceeds.

Ms. Rodriguez further requests the Court to order Defendants to provide a full accounting of all proceeds from the sale of the subject property from June 1, 2004, to the present, and a full accounting of all proceeds from the mortgage of said property from February 9, 2004, including how such proceeds have been spent and the exact whereabouts of any remaining funds. The accounting is necessary so that Ms. Rodriguez can protect the full value of the prejudgment attachment, and so that the Court's order can extend to all proceeds of the fraudulent transfers (not just the $60,183.00 identified to date).

Dated: 5-25-05

Respectfully submitted,

PLAINTIFF MARIA RODRIGUEZ
By her attorneys,

Jonathan L. Mannina, BBO # 636492
Sergio E. Carvajal, BBO # 645276
Mia C. Kim, BBO # 600935
Legal Assistance Corp. of Central Massachusetts
405 Main Street
Worcester, MA 01608
Tel: 508-752-3718
Fax: 508-752-5918

### CERTIFICATE OF SERVICE

I, Sergio E. Carvajal, attorney for the Plaintiff, hereby certify that a true copy of the above document was served upon Defendant Victor Montalvo, 47 Salem Street, Fitchburg, Massachusetts 01420, and the attorney of record for Defendant Carmen Solis, Janie L. Vowles, Esq., Roncone Law Offices, P.C., 142 Main Street, P.O. Box 767, Leominster, MA 01453, by mailing via First Class Mail, postage prepaid, on this 25th day of May, 2005.

Sergio E. Carvajal, Esq.