United States District Court
District of Massachusetts

```
                                    )
MARIA RODRIGUEZ, Individually       )
and as Administratrix of the        )
Estate of Jose Rodriguez,           )
                                    )   Civil Action No.
        Plaintiff,                  )   04-40224-NMG
                                    )
    v.                              )
                                    )
VICTOR MONTALVO and CARMEN          )
SOLIS,                              )
        Defendants.                 )
                                    )
```

**MEMORANDUM & ORDER**

GORTON, J.

In the instant action, Maria Rodriguez ("Rodriguez") seeks to nullify two real estate conveyances made by Victor Montalvo ("Montalvo") to his mother, Carmen Solis ("Solis"), in order to ensure that Montalvo has funds available to pay any judgment awarded in Rodriguez v. Montalvo, Civil Action No. 02-40139-NMG ("the related case"). Rodriguez now moves for a preliminary injunction to freeze the proceeds of those conveyances.

I.   **Background**

    A.   **The Underlying Case**

    In December 1998, Rodriguez rented a first-floor apartment located at 47 Salem Street, Fitchburg, Massachusetts from

Montalvo. Her son, Jose, had Duchenne's Muscular Dystrophy and was quadriplegic. He was confined to a wheelchair and eventually needed a ventilator to breathe. Rodriguez requested permission to make modifications to the dwelling in order to accommodate Jose's disability. In particular, she wanted to install a permanent ramp on the premises at her own expense and offered to restore the dwelling to its original condition when she moved out. That request was refused by Montalvo and Jose was forced to use a make-shift ramp to enter the apartment. Jose died of his illness on June 11, 2002.

Montalvo tells a far different story of the parties' relationship. He contends that he attempted to accommodate Jose by lending the plaintiff tools to build a wheelchair ramp and, eventually, by agreeing to allow the plaintiff to modify the premises to suit Jose. He also intimates that the plaintiff was a poor tenant, refusing to sign a lease, housing extra people within the premises and refusing to agree to a rental increase.

On July 29, 2002, in the related case, Rodriguez sued Montalvo and Oltman, the alleged manager of the apartment complex, for statutory violations of the Fair Housing Act, 42 U.S.C. § 3601-31, the Massachusetts Anti-Discrimination Statute, M.G.L. c. 151B, and under common law for intentional and negligent infliction of emotional distress, negligent failure to train and supervise and negligent retention. On January 12,

2004, this Court allowed a motion by plaintiff to attach Montalvo's real estate up to the amount of $75,000, the amount that the Court found she had a reasonable likelihood of recovering.

### B. The Fraudulent Transfer Case

Rodriguez filed the instant action after becoming concerned that Montalvo was attempting to transfer fraudulently his assets beyond the reach of a potential judgment creditor. At the time the original dispute arose, Montalvo owned an apartment complex at 30 Mount Pleasant Avenue, Leominster, Massachusetts ("the Property"). On February 19, 2003, Montalvo conveyed one-half of his interest in the Property to Solis for $100.

On May 27, 2003, Plaintiff's counsel telephoned Montalvo and informed him that Rodriguez intended to file a motion for pre-judgment attachment of the Property (the attachment described above). The next day, Montalvo conveyed his remaining one-half interest to Solis for another $100.

Montalvo now states that the transfers were made to repay a series of loans Solis had made to him. In particular, he alleges that Solis had lent him a sum of money to buy the Property and that, in 1999, she had lent him an additional $5,000 to buy out his ex-wife's interest in the Property. There are no documents evidencing those loans.

On February 9, 2004, Solis mortgaged the Property through

Wells Fargo Home Mortgage and, on June 1, 2004, she sold the Property to an alleged <u>bone</u> <u>fide</u> purchaser for value. She received a total of $128,000 as proceeds of the sale. Despite an order of this Court for an accounting, however, she has yet to describe fully the disposition of the proceeds. She states that she gave $32,000 to a friend to purchase a co-op in New York, that she spent $13,000 on moving expenses and that she holds $60,183 in a savings account.

On October 28, 2004, Rodriguez filed the instant action alleging fraudulent transfer pursuant to M.G.L. c. 109A §§ 5 and 6 based on Montalvo's transferral of the Property to Solis and the latter's subsequent mortgage and sale of it.

On November 4, 2004, this Court issued an <u>ex</u> <u>parte</u> temporary restraining order enjoining Montalvo and Solis from "withdrawing, transferring, spending, lending, liquidating, or otherwise disposing of or encumbering up to $75,000 of the proceeds of the sale and mortgage [of the Property]". This Court also scheduled a hearing on plaintiff's motion for a preliminary injunction for November 10, 2004 and ordered defendants to provide an accounting of the proceeds at that hearing.

On November 9, 2004, Montalvo filed a Suggestion of Bankruptcy and the preliminary injunction hearing was cancelled but, on February 24, 2005, the automatic stay of the claims against Montalvo in this and the related case were lifted. On

May 19, 2005, a hearing was held. This Court extended the temporary restraining under until June 2, 2005 and heard oral argument on plaintiff's motion for a preliminary injunction.

## II. Legal Analysis

### A. Preliminary Injunction Standard

To merit a preliminary injunction under Fed.R.Civ.P. 65(a), the moving party must show: 1) a likelihood of success on the merits, 2) irreparable injury, 3) that such injury outweighs any harm to the defendant and 4) that the injunction would not harm the public interest. Lanier Professional Services, Inc. v. Ricci, 192 F.3d 1, 3 (1st Cir. 1999); Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989). The first factor is considered most important. New Comm Wireless Services, Inc. v. SprintCom, Inc., 287 F.3d 1, 8 (1st. Cir. 2002); Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).

### B. Likelihood of Success on the Merits

Under Massachusetts law, to prove that a transfer was fraudulent with respect to a creditor, the creditor must prove that "the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor". M.G.L. c. 109A § 5(a)(1). Such "actual intent" is commonly proven "circumstantially and inferentially". Hasbro, Inc. v. Serafino, 37 F.Supp.2d 94, 98 (D.Mass. 1999); Palmer v. Murphy, 677 N.E.2d

247 (Mass. 1997). The Massachusetts Uniform Fraudulent Transfer Act suggests eleven factors that a court "may" consider in determining whether "actual intent" to hinder, delay or defraud was present:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

M.G.L. c. 109A § 5(b). While the "presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud". Hasbro, 37 F.Supp.2d at 98 (citation and quotation omitted).

It appears to be uncontested that several of the factors are present in this case. The first factor is present because the transfers were to Montalvo's mother, an "insider" under the statute. M.G.L c. 109A § 2. The fourth factor is present because, at the times of the transfers, Montalvo had been threatened with (continuing) litigation and with a real estate attachment by the plaintiff. The fifth and ninth factors are

likely present because it appears that the Property was Montalvo's only substantial asset and that he was rendered insolvent by the transfers (he has recently declared bankruptcy).

In addition to those factors, the eighth factor (lack of receipt of reasonably equivalent value), which is disputed, also favors the plaintiff. The documentary evidence indicates that Solis paid a total of $200 for the Property, woefully short of fair market value and not resembling an arms length transaction. Solis argues that she had made a series of undocumented loans to Montalvo and that the Property was conveyed as repayment. That contention is underwhelming, however, because, in her affidavit, Solis states that she only lent Montalvo $5,000 plus unspecified additional sums which, apparently, were not large enough to be memorable. Even assuming that those loans were legitimate and were not gifts, the aggregate sum is obviously less than the net $128,000, give or take, that Solis received from the sale of the Property. Thus, the facts indicate that Solis did not pay a "reasonably equivalent value" for the Property.

Finally, the timing of the transfers, in particular the second transfer, is highly suspect. The second transfer occurred on <u>the</u> <u>day</u> <u>after</u> the plaintiff threatened to seek a real estate attachment, obviously indicative of an intent to hinder creditors. Solis does not even attempt to explain that timing. As such, the conclusion is inescapable that the conveyance was

made with the "actual intent" to hinder, delay or defraud the plaintiff, as a potential creditor. Thus, Rodriguez has demonstrated a reasonable likelihood of success on the merits of her fraudulent transfer claim.

### C. The Remaining Factors

The remaining factors also weigh in favor of the plaintiff. Rodriguez has established that she would suffer irreparable harm in the absence of an injunction because she would be unable to collect any judgment in the related case. Aside from the proceeds at issue, neither of the defendants has sufficient funds to pay a judgment: Defendant Montalvo is in bankruptcy and Solis states that she lives on social security payments. In her affidavit, Solis candidly states her intention to spend the remaining proceeds if given the opportunity, speculating that she would like to buy a condominium. Moreover, the defendants' previous actions in response to the prospect of litigation (i.e. the immediate conveyance of the Property), demonstrate that they would not hesitate to dispose of the proceeds if permitted.

On the other hand, the potential harm to the defendants caused by the entry of a preliminary injunction would be less onerous. Solis intimates that she needs the subject proceeds for her medical care but that contention is severely undercut by the fact that she recently gave (or loaned with little chance of repayment) $32,000 to a friend and spent $16,000 on moving costs

and home furnishings.

Because the plaintiff has made a particularly strong showing of a likelihood of success on the merits, the potential for irreparable harm to Solis is accordingly diminished. The highly suspect timing of the subject conveyances and the facially inadequate consideration paid by Solis render it unlikely that Solis will be found to have any legitimate claim to the proceeds. As such, a restraint on her ability to dispose of them for the time being causes her no harm. Accordingly, plaintiff's motion for a preliminary injunction will be allowed. Further, to assure the availability of such funds at the conclusion of the case, the funds are to be held in escrow by the Court.

Moreover, because Solis has not provided a complete accounting of the proceeds, it is unclear whether any portion thereof was disposed of in violation of this Court's Temporary Restraining Order, entered November 4, 2004, which remained in effect with respect to Solis even after the filing of Montalvo's bankruptcy. Solis will be directed to file an affidavit addressed to that subject.

**ORDER**

In accordance with the foregoing, plaintiff's Motion for a Preliminary Injunction (Docket No. 10) is **ALLOWED** and the preliminary injunction, attached hereto and by this reference made a part hereof, shall enter.

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated June 2, 2005